**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:24-cr-72(1) |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CESAR CERVANTES, | : | |
| | : | |
| Defendant. | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on the Government's Motions in Limine (Docs. 181, 182, 183). Defendant filed a Response (Doc. 190). Thus, these matters are ripe for the Court's review.

Courts have the discretion to determine motions in limine pursuant to their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). The purpose of motions in limine is "to avoid delay and ensure an evenhanded and expedient trial by ruling on certain evidentiary issues in advance of trial." *Enoch v. Hamilton Cnty. Sheriff*, 588 F. Supp. 3d 806, 811 (S.D. Ohio 2022) (quotation omitted). "When a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *United States v. Kistler*, No. 2:22-CR-67, 2023 WL 1099726, at *2 (S.D. Ohio Jan. 30, 2023) (quotation omitted). Following this principle, courts often defer ruling on broad

categories of evidence in limine. *See id.* A ruling on a motion in limine is a preliminary ruling that the Court may change at trial "for whatever reason it deems appropriate." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). The Court will hear objections to such evidence if and when they arise at trial. *Gresh v. Waste Serus. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). With this framework in mind, the Court reviews each of the Motions in turn.

I. **Motion in Limine and Notice Regarding Direct Evidence, Inextricably Intertwined Evidence, and Rule 404(b) (Doc. 181)**

The Government's first Motion in Limine (Doc. 181) addresses evidence gathered after the charged conspiracy period ended in August 2023, but before the Indictment. (*See* Motion, Doc. 181, Pg. ID 851.) The Government argues that this evidence is admissible as "direct evidence, or 'inextricably intertwined' evidence, of the charged crimes." (*Id.*) Alternatively, the Government seeks its admissibility under Federal Rule of Evidence 404(b), with the Motion serving as pre-trial notice under the rule. (*Id.*)

As part of its Motion, the Government describes the evidence it seeks to admit, referring to it collectively as the "Material Evidence." (Motion, Doc. 181, Pg. ID 852.) This evidence includes: (1) intercepts of four phone calls between Defendant and co-Defendant Johnnie Clausell that occurred on November 1, 2023, November 30, 2023, January 8, 2024, and March 7, 2024; (2) evidence gathered from surveillance and a search of Defendant's GMC Sierra vehicle on January 24, 2024; and (3) evidence from search warrants executed in Arizona of Defendant's home and the home of his co-conspirator and cousin, "Lalo," which occurred at the same time as Defendant's arrest on July 19,

2

2024. (*Id.*)

The Government first argues that the Material Evidence is direct evidence of the crimes charged and thus admissible. (Motion, Doc. 181, Pg. ID 853.) To start, the Government notes the standard for relevancy as "extremely liberal," under Federal Rule of Evidence 401. (*Id.* (quoting *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009)) (cleaned up).) Relevant evidence "has any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. In the criminal context, "[r]elevant evidence includes evidence required to prove the existence of a conspiracy between Defendant and his co-conspirators, as well as the Defendant's involvement and intent to commit the charged crimes." *United States v. Bakke*, 942 F.2d 977, 983 (6th Cir. 1991). The Material Evidence, the Government asserts, is also "relevant to corroborate the testimony of certain government witnesses concerning the charged crimes." (*Id.* (citing *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006)).) To this point, the Government reiterates that Defendant is charged with: (1) cocaine trafficking conspiracy; (2) aiding and abetting the distribution of cocaine; and (3) money laundering conspiracy. (*Id.* at Pg. ID 854; *see also* Redacted Indictment, Doc. 76.)

Beginning with the phone intercepts, the Government contends that these show two co-conspirators, Defendant and Clausell, "discussing their past drug conspiracy (Count 1), money owed from that conspiracy, future drug work to pay back the money owed, and efforts to avoid law enforcement." (Motion, Doc. 181, Pg. ID 855.) The Motion specifies the topics of conversation from intercepted phone call, including "(1) paying back the debts owed based on the drugs and money lost in the charged conspiracy; (2)

how they met through a different drug trafficker; (3) how many kilograms Clausell received from [Defendant] that were seized by law enforcement; (4) the costs of the drugs [Defendant] sold Clausell; and (5) potential recourse that Clausell might have to get the seized money back." (*Id.* at Pg. ID 856.) Additionally, in the Government's estimation, the calls show Defendant's efforts to avoid law enforcement detection and "corroborate the testimony of at least three witnesses who will testify." (*Id.*) According to the Government, Defendant's past statements indicate that a likely defense will be that he "did not know the witnesses, and was not involved in drug trafficking or money laundering with them." (*Id.*) Thus, the phone intercept evidence will counter those defenses, if Defendant does testify and opens the door to this argument.

In his Response, Defendant argues that these phone calls are not relevant because they are related to an Arizona case, not this one. (Response, Doc. 190, Pg. ID 999-1000.) However, the Government represents that these phone calls contained drug trafficking conversations between Clausell, a co-defendant in this case, and Defendant. (Motion, Doc. 181, Pg. ID 856.) Thus, the Court finds that the phone call evidence, as described by the Government, clearly acts as relevant direct evidence of the charged crimes and is admissible. *See* Fed. R. Evid. 401; *Bakke*, 942 F.2d at 983; *Whittington*, 455 F.3d at 739. Defendant also argues that the evidence is highly prejudicial to him and thus should be excluded. (Response, Doc. 190, Pg. ID 999-1000.) To this point, the Court notes that unfair prejudice "means the undue tendency to suggest a decision based on improper considerations, not the damage to a defendant's case that results from legitimate probative force of the evidence." *United States v. Lantzy*, 538 F. Supp.3d 745, 755 (E.D.

4

Mich. 2021) (quoting *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999)) (cleaned up). The evidence is highly probative and is not based on improper considerations. Thus, it is not unfairly prejudicial to Defendant.

Next, the Government seeks to admit evidence gathered from Defendant's GMC Sierra in Arizona. (Motion, Doc. 181, Pg. ID 856.) According to the Government, law enforcement in Arizona surveilled the vehicle and obtained a warrant to seize and enter the vehicle to install covert audio/video surveillance devices. (*Id.*) While in the vehicle, law enforcement observed "(1) at least three cell phones; (2) a baggie of cocaine; and (3) paper material in Cervantes' name." (*Id.*) The phones were then seized and searched pursuant to a warrant and contained "evidence related to the charged conspiracy and from the same time period as the charged conspiracy." (*Id.*) This evidence included text and phone conversations between Defendant and Clausell, as well as Defendant and his cousin, "Lalo," discussing logistics of the drug delivery and proceeds during the conspiracy period. (*Id.* at Pg. ID 856-57.) The search also revealed a Google search history with terms related to money laundering and photos of currency consistent with drug and money laundering transactions. (*Id.* at Pg. ID 857.)

While Defendant claims again that evidence from Arizona is not relevant and highly prejudicial to him (*see* Response, Doc. 190, Pg. ID 999-1000), the Court finds that this evidence directly addresses the charged crimes and is not unfairly prejudicial. Not only do the conversations, Google searches, and photographs provide evidence of Defendant's knowledge of—and involvement in—the drug trafficking and money laundering conspiracies, but the bulk of the conversations occurred during the charged

5

conspiracy period. Although Defendant also argues that any evidence involving his cousin is highly prejudicial and outweighs its probative value (Response, Doc. 190, Pg. ID 999-1000), the Court disagrees, as their conversations center on drug trafficking and drug delivery, during the conspiracy period. This evidence is thus relevant under Federal Rule of Evidence 401 and highly probative of the charged offenses under Rule 403.

Finally, the Government seeks to admit evidence gathered from the searches of Defendant's home and the home of his cousin, and Defendant's arrest, in July 2024. (Motion, Doc. 181, Pg. ID 857-61.) These searches uncovered several items related to the drug conspiracy and Defendant's connection with Cincinnati, including a Cincinnati Reds baseball, firearms, ammunition, body armor, a digital scale, sixteen cell phones, cocaine, plastic wrap that matched the type used to wrap the cocaine seized in Cincinnati, and $405,283 in cash. (*Id.* at Pg. ID 858-59.) During Defendant's arrest, the law enforcement officers uncovered a cell phone, which contained material that the Government maintains will be used to impeach Defendant, if he testifies, and a quantity of cocaine, which the Government intends to use to counter Defendant's potential arguments that he was not involved with cocaine. (*Id.* at Pg. ID 861.) Defendant again argues that this is more prejudicial to him than probative of the allegations arising from Cincinnati. (Response, Doc. 190, Pg. ID 999-1000.)

The Court finds that the evidence is highly probative, *see Lantzy*, 538 F. Supp.3d at 755, but is less convinced that this material constitutes direct evidence of the charges, as compared to the evidence from the phone calls and GMC Sierra seizure. Nevertheless, it agrees with the Government that the evidence from the search warrants and Cervantes'

arrest constitutes inextricably intertwined evidence, or *res gestae*. This material explains the "prelude to the charged offense[s], is directly probative of the charged offense[s], arises from the same events as the charged offense[s], forms an integral part of a witness's testimony, or completes the story of the charged offense[s]." *United States v. Grogan*, 133 F.4th 553, 563 (6th Cir. 2025) (quotation omitted). The search and arrest evidence is thus admissible under the doctrine of inextricably intertwined evidence because it "put[s] the charges in the appropriate context." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015). In sum, the Court finds that all evidence here is admissible — at this juncture — especially as Defendant has not shown that the probative value of this evidence is substantially outweighed by any unfair prejudice to him. *See Bilderbeck*, 163 F.3d at 978.

II.     **Notice of Intent to Impeach Defendant Pursuant to Federal Rule of Evidence 609 (Doc. 182)**

The Government next gives notice of its intent to impeach Defendant with evidence of his prior conviction, pursuant to Federal Rule of Evidence 609, and requests an evidentiary ruling on the same. (Motion, Doc. 182.) Rule 609(a) allows a party to attack a witness's character for truthfulness by evidence of a criminal conviction "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year"; that evidence "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a). Meanwhile, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," then Rule 609(b) applies. Fed. R. Evid. 609(b). Under this subsection, the evidence of this

conviction is admissible if "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." *Id.*

The Sixth Circuit has not definitively interpreted Rule 609(b) for the purpose of determining when a witness is said to have been released from confinement. *United States v. Peatross*, 377 F. App'x 477, 489 (6th Cir. 2010). But, it has "commented, without being asked to decide the issue, that evidence of a prior conviction is admissible so long as less than ten years have passed since the witness was release[d] from confinement, or the period of his parole or probation had expired." *Id.* (quotation omitted). To this end, the Government notes that Defendant has a prior conviction in a drug trafficking case for manufacturing/delivering 900 or more grams of cocaine. (Motion, Doc. 182, Pg. ID 870.) He was convicted in 2009, sentenced to fifteen years in prison, released on parole in 2014, and remained on parole until February 27, 2017. (*Id.*) Accordingly, based on the Sixth Circuit's comment, fewer than ten years have passed since the expiration of Defendant's parole period, making the evidence of his prior conviction admissible subject to Rule 609(a). As the Sixth Circuit has yet to make a finding in the alternative, the Court finds that Defendant's parole counts as confinement, and evidence of his prior conviction is indeed admissible under Rule 609(a).

Still, the Court is wary to adopt a rule not yet conclusively decided by the Sixth Circuit. *See United States v. Tawfik*, No. CR 17-20183, 2022 WL 866395, at *2 (E.D. Mich. Mar. 23, 2022). The Government seemingly shares the same concern and so its Motion

8

continues by arguing that the prior conviction is nevertheless admissible under Rule 609(b). Under this rule, the conviction is admissible for impeachment purposes if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect," and pretrial notice is given. Fed. R. Evid. 609(b). Courts consider the following factors when determining admissibility of a prior felony for impeachment purposes: "(1) The impeachment value of the prior crime; (2) The point in time of the conviction and the witness' subsequent history; (3) The similarity between the past crime and the charged crime; (4) The importance of the defendant's testimony; [and] (5) The centrality of the credibility issue." *United States v. Frazier*, 314 Fed. App'x 801, 804 (6th Cir. 2008) (quoting *United States v. Moore*, 917 F.2d 215, 234 (6th Cir. 1990)). The Court still "has broad discretion to admit evidence of prior convictions after conducting the probative value/prejudicial effect inquiry." *United States v. Sloman*, 909 F.2d 176, 181 (6th Cir. 1990).

To this end, courts "should conduct a hearing on the matter." *United States v. Peatross*, 377 F. App'x 477, 489 (6th Cir. 2010). "In order to admit such evidence, a court must make an on-the-record finding based on the facts that the conviction's probative value substantially outweighs its prejudicial impact." *United States v. Collins*, 799 F.3d 554, 571 (6th Cir. 2015) (cleaned up). "This hearing on the record, which need not be extensive, should include a consideration of the [five] factors." *Id*. "In the Sixth Circuit, impeachment under Rule 609 is generally limited to the fact of conviction and should not include the details and circumstances surrounding the conviction unless the defendant's testimony opens the door to such evidence." *United States v. Brewer*, No. 3:17-CR-37, 2018

9

WL 773137, at *1 (W.D. Ky. Feb. 7, 2018) (quotations omitted). At the Final Pretrial Conference, the Court offered the Government the opportunity to put evidence on the record as to the five factors. The Government maintains, both in its Motion and at the hearing, that each of the five factors weighs in favor of admitting the prior conviction under Rule 609. (Motion, Doc. 182, Pg. ID 873.) The Court considers each in turn, taking the matter under advisement and deferring any order until trial in the event that Defendant chooses to testify and opens the door to this evidence.

The first factor examines the impeachment value of the prior crime. The Government notes that Defendant "has repeatedly claimed that he was not involved in cocaine trafficking." (Motion, Doc. 182, Pg. ID 873.) Meanwhile, the prior conviction for drug trafficking directly rebuts this; thus, if Defendant testifies and opens the door to the issue, then the "probative value of the evidence of [the prior conviction] outweigh[s] its potential prejudice." (*Id.* (quoting *United States v. McDonel*, 362 F. App'x 523, 529 (6th Cir. 2010)) (cleaned up).) The Court agrees that, if Defendant indeed makes this claim, then the prior conviction's probative value substantially outweighs any prejudicial effect. *See United States v. Bender*, 265 F.3d 464, 471 (6th Cir. 2001); *see also United States v. McDonel*, 362 F. App'x 523, 529 (6th Cir. 2010). This factor weighs in favor of admissibility, to the degree that Defendant opens the door to with his testimony.

The second factor examines the point in time of the prior conviction and the subsequent history. The Government points out that Defendant's parole period lasted until February 2017, and his cocaine distribution with his co-Defendants began in 2016. (Motion, Doc. 182, Pg. ID 874.) According to the Government, this "closeness in time

10

supports the admissibility of the conviction," because the conviction is not "ancient," but rather shows "an ongoing pattern of activity." (*Id.*) Once again, the Court finds that if Defendant does attempt to disclaim this activity at trial, then the probative value of the conviction outweighs any prejudice; this factor also weighs in favor of admissibility.

The third factor compares the similarity of the past crime and the charged crime. The Government states that, in the prior conviction, Defendant helped deliver over 100 kilograms of cocaine in a semi-truck, where the tractor had Arizona plates and the trailer had Ohio plates. (Motion, Doc. 182, Pg. ID 874.) Defendant delivered the cocaine from Tucson to Chicago, handed twenty-five kilograms to a co-conspirator, and was found with the remaining seventy-five kilograms. (*Id.*) The Government thus asserts that these two crimes are sufficiently similar; and, to the extent that the similarity could cause prejudice, the Government notes that an appropriate limiting instruction can ameliorate any risk of prejudice. (*Id.* (citing *United States v. Moore*, 917 F.2d 215, 235 (6th Cir. 1990)).) The Court agrees that the crime and the charge are sufficiently similar for purposes of Rule 609(b). To this end, though, the Court will issue the appropriate, immediate admonition to the jury regarding their consideration of the prior conviction if the Government uses it to impeach Defendant.

The Government addresses the fourth and fifth factors, the importance of Defendant's testimony and the centrality of his credibility, together. (Motion, Doc. 182, Pg. ID 875.) According to the Government, if Defendant testifies, his "testimony would be critically important, as would his lack of credibility." (*Id.*) The Government contends that, based on Defendant's actions during the pendency of this case, "it is apparent that

11

the Defendant will seek to undercut the credibility of the three cooperating witnesses, and claim that *all* of them are lying, while he is the *only one* telling the truth." (*Id.*) It would therefore be "inappropriate" to allow Defendant to attack the credibility of the Government's witnesses while the Government could not do the same. (*Id.*) Assuming Defendant testifies, and downplays or refutes any involvement in drug trafficking, the Court agrees that Defendant's testimony is critical to the case; it follows naturally, then, that his credibility is central to the case as well, especially if he attempts to impeach other witnesses. The Court finds that these two factors weigh in favor of admissibility. While Defendant summarily states that evidence of his "background" is more prejudicial than probative (*see* Response, Doc. 190, Pg. ID 999), the Court finds that, under Rule 609(b), if Defendant opens the door to this evidence, his prior conviction may be used for impeachment purposes. Its probative value will substantially outweigh the prejudicial effect on Defendant. Nevertheless, as the Government suggests, the Court finds that any potential prejudicial effect can be mitigated by a jury instruction.

To that end, at this point, the Court refrains from issuing an order explicitly allowing this evidence. At trial, if Defendant chooses to testify and opens the door to this evidence, and the Government chooses to impeach Defendant with his prior conviction, the Court will rule on the admissibility under Rule 609(b). If applicable, the Court will then provide an immediate jury instruction, following the Sixth Circuit Pattern Criminal Jury Instruction 7.05A; the same instruction will be given prior to jury deliberation.

## III.    The Government's Trial Brief and Motions in Limine (Doc. 183)

Finally, the Court turns to the Government's Trial Brief and Motion in Limine

12

(Doc. 183). While the Government makes many requests in its Motion, some do not seek a court order and were addressed on the record at the Final Pretrial Conference. The following will thus focus on the Government's remaining requests. Many of these implicate the special circumstances involved with Defendant's pro se status. The Government's first request involves the content and form of opening statements and closing arguments. Specifically, the Government requests that Defendant not be permitted to testify during opening statements and closing arguments. The Court has discretion in controlling the duration and limiting the scope of the opening statements and closing arguments. *United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir. 1991); *United States v. Chapple*, 801 F. App'x 379, 382 (6th Cir. 2020). And, the Government is correct that any assertion of personal fact when the speaker is not under oath on the stand is inadmissible under Federal Rule of Evidence 603. (Motion, Doc. 183, Pg. ID 881.) Instead, the Court reminds the parties that the opening statement is meant to briefly state the issues and outline what evidence will be presented. *United States v. Thomas*, 41 F.3d 1508, 1994 WL 645725, at *4 (6th Cir. 1994) (table).

The Government makes a similar request for the closing arguments, asking that the Court order Defendant not to testify during the closing arguments. (Motion, Doc. 183, Pg. ID 882-83.) The Government also asks that the Court prohibit Defendant from commenting on potential punishment, pretrial legal issues, his status as a pro se defendant, or other forms of attempting to seek sympathy unrelated to the facts at issue. (*Id.* (collecting cases).) The Court agrees that these potential comments and testimony would be improper during a closing argument and therefore orders that neither party

13

include them in the closing arguments. Moreover, closing arguments may not call for speculation or assume facts that were not in evidence or otherwise supported by the record. *See United States v. Vining*, 224 F. App'x 487, 497 (6th Cir. 2007).

Accordingly, with regard to the opening statements and closing arguments, the Court orders that: (1) neither party may use the open or close to testify as to the facts of the case; (2) the parties shall phrase opening arguments in terms of "what the evidence will show"; and (3) the parties shall refrain from addressing irrelevant or prejudicial material—including potential punishment, pretrial legal issues like suppression, personal attacks on law enforcement or prosecutors (except for proper impeachment), Defendant's status as a pro se defendant, or Defendant's ability to access discovery. If either party does not abide by this order, the Court will intervene as necessary.

Next, the Government addresses the direct and cross examination procedures. Specifically, the Government mentions concerns that Defendant will attempt to testify through his questioning, improperly attack witness credibility, and ask questions about irrelevant information—such as discovery issues, pretrial legal issues, potential punishment, and his pro se status. (Motion, Doc. 183, Pg. ID 884-85.) Federal Rule of Evidence 611 allows the Court to exercise reasonable control over the mode and order of examining witnesses "so as to (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Furthermore, Rule 611(b) limits the scope of cross-examination to only those subjects covered on direct examination, along with matters affecting the witness's credibility. Coupled with the other applicable Rules of Evidence, like Rule 603's

14

requirement that an individual be under oath to testify, the Court finds it appropriate to limit any attempts to ask inappropriate or irrelevant questions, testify, or improperly attack a witness's credibility. To that end, the Court orders that all parties ask questions in interrogatory form and refrain from any questions that are irrelevant to the trial.

The Government also asks that the Court address, in a pretrial order, general limits on any potential references to the discovery process, Defendant's pro se status, and any other pretrial issues, like Fourth Amendment concerns, during the trial. (Motion, Doc. 183, Pg. ID 887-88.) As the Court has noted above, these topics would indeed be inappropriate. *See United States v. Stuart*, 507 F.3d 391, 395 (6th Cir. 2007) ("As with most evidentiary rulings, . . . courts rather than juries must ultimately decide whether a Fourth Amendment claim requires the suppression of evidence."); *United States v. Mandell*, No. 12-CR-842, 2014 WL 287520, at *3 (N.D. Ill. Jan. 27, 2014) (explaining that comments on discovery issues are inappropriate); *United States v. Krug*, No. CR 09-1148, 2013 WL 12219025, at *2 (C.D. Cal. Feb. 1, 2013) (highlighting that pro se status discussion is inappropriate because it does not make the facts of the case more or less likely). Additionally, the Government reiterates, and the Court has noted on several occasions, that its attorneys have diligently complied with all discovery obligations up to this point, and they represent that they will continue to do so. Thus, the Court does indeed find it appropriate to order that the parties refrain from any discussion during the trial of the discovery process and related complaints, Defendant's pro se status, and any other pretrial issues.

Finally, the Government requests an order "prohibiting the defendant from

15

referencing or introducing any out-of-court statements made by non-testifying witnesses unless they have provided a prior proffer to the Court establishing a valid exception." (Motion, Doc. 183, Pg. ID 886.) Certainly, under Federal Rule of Evidence 802, hearsay statements are inadmissible, barring the narrow exceptions under Rules 803 and 804. That said, neither party is permitted to introduce hearsay statements, unless an exception applies. During the trial, if a proper objection to a hearsay statement is made, the Court will sustain the objection and strike the hearsay statement from the record.

The remaining requests the Government makes are not couched in the context of a motion for pretrial order. Accordingly, the Court finds that these concerns were best addressed at the Final Pretrial Conference on June 4, 2026. Nevertheless, the Court briefly mentions the requests here. The Government seeks: (1) that the Court issue its proposed voir dire questions to the parties ahead of the trial; (2) that the Court adopt the more common method for a pro se defendant to conduct his own direct examination wherein Defendant will ask a question and then respond to it; (3) that the Court remind Defendant he may not engage in hybrid representation, unless his behavior at trial requires it, and that, if this becomes an issue, the Government be allowed to brief the issue; (4) that the Court issue jury instructions pertaining to Defendant's pro se status, which the Court notes it plans to issue; (5) that the Court warn Defendant about improper character evidence and impeachment, and that the Court preclude such evidence and impeachment at trial; (6) that the Court warn Defendant that he is not permitted to introduce positive character evidence, unless submitted under Rule 404(a)(2)(A), or put on a witness to testify to Defendant's own statements or the statements of co-conspirators;

16

and (7) that the Court preclude Defendant from making any arguments intended only to illicit sympathy, while unrelated to the facts at issue. (Motion, Doc. 183.)

Finally, the Government addresses some of its own potential evidentiary issues and provides possible avenues for admissibility. (Motion, Doc. 183, Pg. ID 890-901, 907-08.) First, the Government notes that it intends to introduce out-of-court statements that are either non-hearsay under Rule 801(d) or qualify for a hearsay exception under Rules 803 and 804. (*Id.* at Pg. ID 890.) These will include (1) statements by the Defendant, a party-opponent (not hearsay under Rule 801(d)); (2) the other side of certain conversations with the Defendant to provide context or show knowledge (not hearsay when used to provide context, *see United States v. Alsop*, 12 F. App'x 253, 259 (6th Cir. 2001)); and (3) statements of co-conspirators during and in furtherance of the conspiracy (not hearsay under Rule 801(d)). (*Id.* at Pg. ID 890-91.) If the Government does introduce this evidence within this context, then the Court finds that it is admissible; however, this finding shall not preclude any objections to improper hearsay evidence.

The Government continues to the admission of wiretap recordings. The Court notes that these recordings have been properly authenticated pursuant to Rule 901 (*see* Motion, Doc. 183, Pg. ID 893-94; Notice of Intent to Introduce Evidence as Self-Authenticating, Doc. 179). Although, they may still be subject to hearsay and relevance objections, which Defendant may raise at trial. The Government also notes that it may seek to introduce jail calls or messages from Defendant, used either to prove his identity on the wiretap calls or for the inculpatory content in the jail calls. (Motion, Doc. 183, Pg. ID 896.) To that end, the Government notes that the Sixth Circuit "regularly upholds the

17

admission of jail calls at trial." (*Id.* (collecting cases).) The Court agrees that these will be admissible, subject to proper objections. Similarly, the Government indicates that it intends to verify Defendant's voice on the phone with the testimony of a law enforcement witness who became familiar with Defendant's voice throughout the investigation and during jail calls. (*Id.* at Pg. ID 896-97.) The Government asserts that this testimony is appropriate under Federal Rule of Evidence 901(b)(5), and that the Sixth Circuit allows voice identification by someone who became familiar with the voice at any time. (*Id.* (quoting *United States v. Simms*, 351 F. App'x 64, 69 (6th Cir. 2009)).) While Defendant objects to the use of officers to testify to his voice as a waste of time and resources (*see* Response, Doc. 190, Pg. ID 1000), the Court notes that this testimony is necessary to authenticate the jail calls and the testimony and jail calls are otherwise admissible, subject to proper objections.

Next, the Government indicates that it plans to use summary exhibits under Federal Rule of Evidence 1006 "[t]o more efficiently present certain voluminous or otherwise difficult to review evidence to the jury." (Motion, Doc. 183, Pg. ID 897.) Summary evidence under this rule has five requirements: (1) the items must be so voluminous that they cannot conveniently be examined in court by the jury; (2) the proponent of the summary must also have made the items available for examination or copying, or both, by the other parties at a reasonable time and place; (3) the proponent of the summary must establish that the underlying documents are admissible in evidence; (4) the summary document must be accurate and nonprejudicial; and (5) the summary document must be properly introduced before it may be admitted into evidence. Fed. R.

Evid. 1006. The Government represents that the summary evidence it intends to introduce, namely bank records, trucking records, and location data records, meets all of these requirements. (Motion, Doc. 183, Pg. ID 897-99.) To that end, the Court finds it is admissible, pending proper introduction at trial and barring any other proper objections.

The Government next seeks to present jury transcripts of the audio recordings offered into evidence at trial. (Motion, Doc. 183, Pg. ID 899.) These transcripts correspond to recordings of phone calls with Defendant. (*Id.*) The Sixth Circuit explicitly allows this. *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). And, where the parties stipulate to the accuracy of the transcripts, they may be submitted as evidence. *Id.* In the absence of a stipulation, the transcripts may still be admitted, provided the transcriber "verif[ies] that he or she has listened to the tape and accurately transcribed its content," and the district court "make[s] an independent determination of accuracy by reading the transcript against the tape." *United States v. Fults*, 639 F. App'x 366, 371 (6th Cir. 2016) (cleaned up). The Government states that it has provided draft transcripts to Defendant, invited his edits, and offered Defendant an opportunity to stipulate to the accuracy so that the transcripts can be admitted as evidence. (Motion, Doc. 183, Pg. ID 900.) However, in the event that the parties cannot stipulate to the transcripts, the Government maintains that the transcripts can still be admitted pursuant to the procedure in *Fultz*. (*Id.*) To that end, the Court finds that if the parties cannot stipulate to the transcripts, and the Government so requests admission, the Court will examine the transcripts against the recordings to make an independent determination of accuracy.

The Government also plans to introduce business records and phone evidence

based on certificates of authenticity. (Motion, Doc. 183, Pg. ID 900-01.) Regarding business records, the Government states that this evidence was obtained from various companies by way of subpoena, and certificates of authenticity were filed in the Government's Notice of Intent to Introduce Evidence as Self-Authenticating (Doc. 179). (*Id.* at Pg. ID 900.) Accordingly, the Government contends that this evidence falls into the business records exception to the hearsay rule. (*Id.* (citing Fed. R. Evid. 803(6)).) The Government intends for its Motion to serve as notice of its intent to use these records and states that all other elements for admissibility have been met. (*Id.*) The same is true for the phone evidence that the Government intends to introduce at trial by way of a certificate of authenticity. (*Id.* at Pg. ID 901.) The Government notes that the phone evidence, including "records generated by an electronic process or system, and data copied from an electronic device," are "largely extractions from the cell phones of Defendant or his co-conspirators." (*Id.*) According to the Government, this evidence is self-authenticating and was certified pursuant to Rule 902(13). (*Id.; see* Notice of Intent to Introduce Evidence as Self-Authenticating, Doc. 179.) On this point, the Government indicates that it does not intend to call records custodians to provide authentication testimony for the corresponding records and forensic extractions. (*Id.*) Based on these representations, the Court agrees that these items will be admissible, still subject to proper objections at trial.

Last of all, the Government states that it will introduce at trial evidence obtained from publicly available websites and social media accounts, including "Google Maps, screenshots of resort information taken from websites, and screenshots/videos from

social media accounts." (Motion, Doc. 183, Pg. ID 907.) The Government provides notice to the Court that it intends to have a law enforcement witness testify that this evidence was viewed on publicly available websites and that the relevant exhibit "fairly and accurately depicts the material observed on or in those locations." (*Id.* (citing *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017)).) As authentication "is a relatively low hurdle," *see United States v. Quintana*, 763 F. App'x 422, 426 (6th Cir. 2019), the Court finds that, if the witness authenticates the documents as the Government describes, they will be admissible, still subject to proper objections.

*        *        *

Thus, based on the foregoing reasons, the Court **ORDERS** the following:

1. The Government's Motions in Limine (Docs. 181, 182, 183) are **GRANTED**;

2. The Government's evidence, as described in its Motions, **IS ADMISSIBLE** as outlined above, subject to proper objections; and

3. The parties **SHALL ABIDE** by the Court's Order and the Federal Rules of Evidence, as outlined above, regarding the content and form of his opening statement and closing argument, direct and cross examination of witnesses, and throughout the trial generally. Additionally, the parties **SHALL REFRAIN** from including arguments based on pretrial issues, like discovery or Fourth Amendment claims, his status as a pro se defendant, and personal attacks on law enforcement officers or prosecutors.

**IT IS SO ORDERED.**

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND