**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:24-cr-72(1) |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CESAR CERVANTES, | : | |
| | : | |
| Defendant. | : | |

---

**AMENDED ORDER AND OPINION**

---

This matter is before the Court on Defendant's Motion in Limine, Suppress Evidence, and Dismiss Indictment (Doc. 184). The Government has filed a Response to this Motion (Doc. 188). The Government filed a Motion for Leave to File Reply Brief to supplement the Response, which the Court granted. (*See* Motion, Doc. 192; 6/4/2026 Notation Order.) The Court provided opportunity for Defendant to reply to this Reply and Defendant filed a sur-reply (Doc. 195). Thus, this matter is ripe for the Court's review. The Court amends its previous Order (Doc. 193) to address these most recent filings (Docs. 192-1, 195) and begins by addressing Defendant's Exclusions, then will address his request to suppress evidence, and finally will examine his request to dismiss the Indictment.

## I.    Exclusions

Defendant first seeks to exclude certain evidence at trial pursuant to Rules 402, 403, and 404 of the Federal Rules of Evidence. (Motion, Doc. 184, Pg. ID 911.) Specifically,

Defendant first states that all jail calls and "chirps" (a form of electronic messaging in jail) are irrelevant and create unfair prejudice. (*Id.*) In response, the Government points out that Defendant failed to identify a specific call, statement or further explanation of prejudice. (Response, Doc. 188, Pg. ID 934.) This deficiency alone, according to the Government, defeats Defendant's argument. (*Id.*) Nevertheless, the Government concedes that many of the call recordings contain highly prejudicial and irrelevant statements, but notes that some of his calls are "directly relevant." (*Id.*) The Government then provides an example where Defendant is heard talking on the jail call about the amount of drugs that agents found and which of those were attributable to him. (*Id.* at Pg. ID 934.) The Government reiterates that evidence like this is highly relevant, whereas other evidence from the calls is less relevant, but may become more relevant if Defendant opens the door to certain arguments that the calls will rebut. (*Id.*) On that point, the Government states that, when it seeks to introduce this evidence at trial, Defendant "is free to object to the relevance," but "there is no blanket pretrial exclusion of statements by a Defendant simply because they were made in jail." (*Id.*) The Court agrees. As Defendant failed to specify what pieces of evidence from these calls he seeks to exclude, he cannot argue that they are irrelevant or that their prejudicial effect outweighs the probative value. Once the Government introduces a piece of evidence, Defendant can object to the relevance at that time, and the Court will rule on the objection.

Defendant next asks that the Court exclude his background. (Motion, Doc. 184, Pg. ID 911.) Again, the Government notes that this request is a blanket pretrial exclusion where Defendant has failed to specify what evidence from his background he wants to

exclude. (Response, Doc. 188, Pg. ID 934-35.) The Court agrees. Just as above, Defendant may object to a specific piece of evidence related to his background when the Government seeks to introduce it at trial.

Moving on, Defendant asks first that all Ohio wiretaps be "sanitized" to eliminate references to "doing time," as "prejudicial references are inseparable from conversation and substantially outweigh[] probative value." (Motion, Doc. 184, Pg. ID 912.) He also asks that all Ohio wiretaps be excluded entirely because the Government "failed to provide initial call which is exculpatory and material to the outcome of the case." (*Id.*) On the first point, the Government responds that Defendant "cites no authority for categorical sanitization of wiretap recordings." (Response, Doc. 188, Pg. ID 935.) And, the Government offers to consider more specific requests of sanitization if Defendant provides those. (*Id.*) But, the Government maintains that the Court should reject such a broad request and that targeted objections or limiting instructions are otherwise the "appropriate vehicles to remedy Defendant's concerns." (*Id.*) The Court agrees with the Government on this point. Regarding the Ohio wiretaps' exclusion entirely, the Government asserts that all recordings have indeed been produced, including the initial call. (*Id.*) These recordings were produced to prior counsel as "General Discovery" in 2024, and then again to Defendant directly in April 2026. As this Court has said before, absent evidence of prosecutorial misconduct, the Government's assurances that it has complied with its discovery obligations is sufficient, *see* Order, Doc. 186, and the Court sees no need to exclude this evidence pursuant to the unfounded *Brady* allegation Defendant makes.

Lastly, Defendant argues for the exclusion of "jail snitch statements and audios," referring to the recordings by a government agent of Defendant while at Butler County Jail. (Motion, Doc. 184, Pg. ID 912.) Defendant contends that these recordings create prejudice and that he has not received them. (*Id.*) Again, though, the Government reiterates that he did receive these recordings, marked as Attorneys' Possession Only materials, on April 10, 2026, and prior counsel received them in August 2025. (Response, Doc. 188, Pg. ID 936.) Moreover, the Government maintains that it does not intend to use these recordings at trial, so the argument is moot. (*Id.*) And last of all, the Government states that the request fails on the merits, as the Supreme Court "has clearly established that law enforcement officials may question an indicted defendant who has invoked his right to counsel if the questioning relates to offenses other than those that form the basis of his/her indictment." (*Id.* (quoting *United States v. Ford*, 176 F.3d 376, 379 (6th Cir. 1999)).) Here, the jail cell recordings involved Defendant soliciting murder-for-hire of a perceived witness. (*Id.*) And, the Sixth Circuit has "consistently held that other-acts evidence involving threats or attempted acts of violence by defendants against trial witnesses is admissible to show consciousness of guilt." (*Id.* (collecting cases).)

Moreover, a sister court dealt with a similar issue. *United States v. Cope*, No. 03-91-JMH, 2011 WL 1576705 (E.D. Ky. Mar. 30, 2011). The Government briefly restates the circumstances in *Cope*: "While in pretrial detention on multiple drug-related charges, the defendant approached a fellow inmate and offered to pay him $10,000 to murder the AUSA who was investigating and prosecuting the drug cases." (Response, Doc. 188, Pg. ID 937 (citing *Cope*, 2011 WL 1576705, at *1, 7).) The inmate told his wife shortly thereafter,

4

and the FBI then contacted the inmate who agreed to wear a wire so the FBI could record conversations with the defendant. (*Id.* (citing *Cope*, 2011 WL 1576705, at *1, 7).) While the defendant later tried to suppress the evidence, the district court held that "the fact that law enforcement officials arranged for an informant to converse with an indicted defendant about offenses other than those for which the defendant had been indicted is not unawlful." (*Id.* (quoting *Cope*, 2011 WL 1576705, at *1, 7) (cleaned up).) The Government argues that the same logic applies here, making the jail recordings, if the Government did use them, lawful. (*Id.*) The Court agrees that this request for exclusion thus fails on the merits.

## II.    Suppression of Evidence

Next in his Motion, Defendant seeks to suppress several items of evidence. (Motion, Doc. 184, Pg. ID 912.) Defendant first points to the warrant acquired on October 28, 2023, through April 3, 2024, and claims that the monitoring was not limited to the scope of the investigation, officers omitted vital facts, used stale information, and lacked probable cause, did not minimize irrelevant communications, and had a cooperating Defendant speaking with Defendant "on a consensual line." (*Id.*) Defendant specifically takes issue with the pole camera footage installed near his home in Arizona, pursuant to the warrant. (*Id.* at Pg. ID 912-13.) The Government first states that this argument is moot because it does not intend to use this footage at trial. (Response, Doc. 188, Pg. ID 941.) But, the Response also notes that no warrant is needed to install a pole camera, as officers "had a right to access the public utility pole, and the camera captured only views plainly visible to any passerby." (*Id.* (citing *United States v. Houston*, 813 F.3d 282, 288 (6th Cir.

5

2016).) Put differently, "[w]arrantless observation from a public vantage point does not violate a reasonable expectation of privacy." (*Id.* at Pg. ID 942 (citing *California v. Ciraolo*, 476 U.S. 207, 213 (1986)).)

Defendant continues his argument, though, next stating that, because the police found nothing from the pole cameras, they expanded their surveillance with a wiretap, and this wiretap was acquired with stale information and omissions of fact, and points to a few facts that he claims are just some examples of the false statements in the affidavit used to acquire the Arizona wiretap. (Motion, Doc. 184, Pg. ID 913.) The Government again states that this is moot, as the Arizona wiretap evidence will not be used at trial. (Response, Doc. 188, Pg. ID 937.) The Response also states that the argument is still meritless, as Defendant can only point to "factual quibbles," that, even in the aggregate, fall far short of the standard warranting a *Franks* hearing. (*Id.*) Rather, to obtain a hearing, a defendant "must make a substantial preliminary showing that the affiant deliberately or recklessly included a false statement—not simply dispute the affidavit's characterizations." (*Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006). Indeed, in *Abboud*, the Sixth Circuit made clear that the defendant "has the burden to prove the falsehoods made in the affidavit," and the "mere fact that [he] disagree[s] with the affidavit is insufficient to meet this burden." 438 F.3d at 577. The Government asserts that Defendant has not offered this proof, and the Court agrees. Defendant's issues with the affidavit amount to nothing more than a "dispute [of] the affidavit's characterizations." *Franks*, 438 U.S. at 171.

Defendant next challenges the execution of the search warrant in January 2024 of

his vehicle, claiming that police exceeded the scope of the warrant by removing it from a parking lot, searching and photographing its contents, and retaining cell phones and other items found inside. (Motion, Doc. 184, Pg. ID 914-15.) But the Government is quick to point out that Defendant cites the wrong warrant, as the warrant controlling this search was the wiretap application, which "expressly and repeatedly authorized what law enforcement did." (Response, Doc. 188, Pg. ID 938.) The Government goes on to cite specific lines in the wiretap application that explicitly authorize the search performed on Defendant's vehicle. (*Id.* at Pg. ID 938-39.) To this point, the Court finds Defendant's argument that the search exceeded the scope unconvincing. Additionally, the Government argues that, as far as the items seized, many of these items, specifically, the baggie of cocaine, one of the phones, and the body armor, were in plain view, and thus they were appropriately seized under the plain-view doctrine. (*Id.* at Pg. ID 939; Reply, Doc. 192-1, Pg. ID 1027.) The Court agrees with this argument as well.

As far as the remaining items from the car, the Government argues that this evidence was properly found pursuant to the automobile exception. (Reply, Doc. 192-1, Pg. ID 1030.) Under this exception, officers can search a vehicle without a warrant if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). The Government points to several cases where officers witnessed drugs in a vehicle in plain view, which gave them probable cause to search the remainder of the vehicle without a warrant. (Reply, Doc. 192-1, Pg. ID 1030 (collecting cases).) Indeed, the officers in these cases "were therefore justified in searching the car beyond the passenger compartment," without a warrant after seeing

drugs in plain view. *United States v. Burns*, 298 F.3d 523, 542 (6th Cir. 2002). The Government thus argues that the officers' search of the vehicle was justified after they witnessed the bag of cocaine in plain view; this includes their search of compartments and containers in the vehicle. (Reply, Doc. 192-1, Pg. ID 1030-31.) And, the Government points out that law enforcement already had ample authority to be in the car pursuant to several state court warrants and orders. (*Id.* at Pg. ID 1031.)

Defendant argues that the automobile exception does not apply because the entire operation was "staged." (Sur-Reply, Doc. 195, Pg. ID 1113.) However, beyond these conclusory claims that the search was wrong, not ordinary, and that the officers "made it all up," Defendant does not point to evidence on the record of the officers' misconduct. (*See id.* at Pg. ID 1114.) And, his argument that the automobile exception does not apply because the install warrant did not authorize a search (*see id.*) does not convince. Defendant fails to realize that, after the officers saw cocaine in plain view, the automobile exception authorized a full search of the vehicle, even without a search warrant in place. The Court agrees with the Government's arguments and finds that the automobile exception applies here. A body of case law in the Sixth Circuit supports this finding. *See Burns*, 298 F.3d at 542; *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998); *United States v. Moralez*, No. 21-5859, 2022 WL 3500192, at *3 (6th Cir. Aug. 18, 2022); *United States v. Vance*, No. 3:10-CR-70, 2017 WL 2469955, at *5 (W.D. Ky. June 7, 2017).

Out of an abundance of caution, the Government also maintains that the search of the vehicle was proper as a valid inventory search and under the inevitable discovery doctrine. Addressing the inventory search theory first, the Government states that,

pursuant to a court order, the vehicle was lawfully seized and towed to a law enforcement facility; at this point, Tucson's Police Department required an inventory search. (Reply, Doc. 192-1, Pg. ID 1031.) The Reply goes on to quote the department's General Orders requiring an inventory of any vehicle brought to the impound lot. (*Id.*) Importantly, the Government notes that, in the Sixth Circuit, it is "clear that inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." (*Id.* at Pg. ID 1032 (quoting *United States v. Snoddy*, 976 F.3d 630, 633 (6th Cir. 2020)) (cleaned up).) Accordingly, the Government maintains that the inventory search of Defendant's car was proper. Based on the policy and Sixth Circuit case law, the Court agrees.

Moving onto the inevitable discovery argument, the Government contends that the search also falls under this doctrine. (Reply, Doc. 192-1, Pg. ID 1033.) Under this doctrine, the exclusionary rule does not apply "where the evidence would have inevitably been discovered through lawful means." (*Id.* (citing *Nix v. Williams*, 476 U.S. 431 (1984)).) The Sixth Circuit defines discovery as inevitable by asking "what would have happened if the search had never occurred." (*Id.* (citing *United States v. Clayton*, No. 25-5713, 2026 WL 973956, at *2 (6th Cir. Apr. 10, 2026)).) Thus, the Government states that, assuming there was an issue with the applicability of the automobile exception, the exclusionary rule does not apply because the law enforcement officers would have inevitably found and seized the items pursuant to the valid inventory search. (*Id.* at Pg. ID 1033-34.) Defendant takes issue with both these arguments by stating that the officers did not complete the Vehicle Inventory Form, ignoring the policy requiring them to do so; thus, according to Defendant, the search was not a valid inventory search, and thus

the inevitable discovery doctrine should not apply either. (Sur-Reply, Doc. 195, Pg. ID 1114.) Defendant claims he did not receive the form "back then nor in discovery." (*Id.*) However, the policy states that the officers must create a list and "submit it to Records." (Tucson Police Department Policy, Doc. 192-2, Pg. ID 1072.) It is therefore not clear why Defendant believes he should have received the form back then, or why it would be included in discovery now. It is speculative to claim that the officers did not complete the proper form simply because Defendant does not have it. The Court is not persuaded by Defendant's arguments and finds that the inventory search and inevitable discovery doctrine apply here as well.

The Government continues by stating that, when the police advised Defendant of what they had recovered, he claimed ownership only of two phones, and denied that the remaining three were his. (Response, Doc. 188, Pg. ID 939; Reply, Doc. 192-1, Pg. ID 1034.) That disavowal, the Government claims, was abandonment, and so Defendant does not have standing to contest the search and seizure of those phones. (*Id.* at Pg. ID 939-40 (collecting cases); *see also* Reply, Doc. 192-1, Pg. ID 1034.)

Nevertheless, the Government states that Arizona law enforcement obtained a search warrant for the abandoned phones, and the U.S. Attorney's Office in this District also obtained a search warrant for them. (Response, Doc. 188, Pg. ID 940.) Put simply, "[e]ach search was authorized," and "[e]ach item was properly seized." (*Id.* at Pg. ID 941.) Finally, to the extent Defendant claims that the recordings taken from the vehicle "exceeded the scope of the investigation," and "violated minimization procedures," (*see* Motion, Doc. 184, Pg. ID 917), the Government notes that these arguments fail because

10

they are "wholly conclusory." (*Id.* (collecting cases).) Defendant points to no specific recording, conversation, or minimization failure. (*Id.*) The Court agrees; this request for relief is broad and unspecified, and so it must fail. *See United States v. Giacalone*, 853 F.2d 470, 478-83 (6th Cir. 1988) (where defendants had necessary information to make a proper minimization challenge if warranted, the court did not abuse discretion in denying a hearing when defendants failed to make any showing).

In general, the Government notes that, to the extent the Defendant challenges the execution of the search warrants under the Fourth Amendment, that challenge fails. (Response, Doc. 188, Pg. ID 942, Sur-Reply, Doc. 195, Pg. ID 115-16; *see also* Reply, Doc. 192-1, Pg. ID 1035.) According to the Government, the warrant was valid upon issuance, and so execution is proper if "the scope and timing of the search is conducted in accordance with the terms of the warrant." (*Id.* (quoting *Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 441 (6th Cir. 2006) (*en banc*)).) The Government maintains that the search warrant meets these requirements. (*Id.*) As Defendant has not provided any showing to the contrary, the Court finds that the search warrant's execution was reasonable. To the extent that Defendant argues that the police obtained a search warrant *after* they had already searched his vehicle, making the search invalid (Sur-Reply, Doc. 195, Pg. ID 1115-16), the Court notes, once again, that the officers did not need a warrant to search his vehicle because of the exceptions described above.

And, lastly, the Government points out that, even if there was evidence to exclude, "the exclusionary rule applies only when the deterrence benefits outweigh its substantial social costs." (Response, Doc. 188, Pg. ID 942 (quoting *Utah v. Strieff*, 579 U.S. 232 (2016)).)

But, here, where officers relied in good faith on warrants issued by neutral magistrates, "exclusion serves no deterrent purpose." (*Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).) And, the Government notes that "none of the four circumstances that defeat the good-faith exception are present," meaning that suppression as a whole should be denied. (*Id.* (citing *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)).) While the Court has already determined that Defendant's requests for suppression of evidence individually fail, the Court is also inclined to agree with the Government. Without evidence of bad faith, the exclusionary rule does not apply here as a whole.

### III.    Dismissal of the Indictment

Finally, Defendant asks that the Court dismiss the indictment based on the Government's failure to provide full access to Attorneys' Possession Only discovery materials. (Motion, Doc. 184, Pg. ID 917-18.) Defendant claims that he was provided "only limited time to review" this discovery and that numerous items of discovery "were not made available for meaningful inspection and review." (*Id.*) The Government is quick — and correct — to point out that this precise issue has been repeatedly discussed, briefed, and ruled on by the Court. (Response, Doc. 188, Pg. ID 943.) The Government has fulfilled and will fulfill all its discovery obligations, the Court has repeatedly provided Defendant with an opportunity to continue his trial date to allow him more time for discovery review, and all parties, and non-parties, have worked to alleviate some of the restrictions Defendant faces as a pro se defendant in custody. And, now, the Government continues to offer to work with Defendant in reducing redactions. (*Id.* at Pg. ID 944.) With no signs of prosecutorial misconduct, the Court finds that the Government's representations that

12

it has provided Defendant with discovery as outlined in the Amended Protective Order is sufficient. Furthermore, knowing the volume of discovery and his own hurdles as a pro se defendant, Defendant has insisted, as recently as June 2, 2026, at an in-person status conference, that he wants to move forward with his June 9, 2026, trial date and that he will be prepared for trial that day. Considering all of this, the Court finds dismissal of the indictment based on Defendant's access to discovery unwarranted.

Nevertheless, the Government argues that dismissal is improper for three distinct reasons. (Response, Doc. 188, Pg. ID 943.) First, Defendant cannot identify any specific withheld document. (*Id.*) The Court finds this persuasive, as, for a *Brady* violation, Defendant must show that the withheld evidence was favorable for the defense and material to the case; but, by not pointing to a specific piece of evidence, he cannot show that the evidence was favorable or material. *See United States v. Baker*, 562 F. App'x 447, 454 (6th Cir. 2014). Defendant has failed to establish a *Brady* violation. *See id.* Furthermore, *Brady* does not create pretrial discovery rights or remedies. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). For this reasoning alone, the Court finds that his motion for dismissal should be denied.

Next, though, the Government states that dismissal is an "extraordinary remedy reserved for the most egregious government misconduct that actually prejudiced the defendant." (Response, Doc. 188, Pg. ID 944 (citing *United States v. Ross*, No. 3:23-CR-128, 2024 WL 6047397, at *6 (E.D. Tenn. Oct. 11, 2024)).) The Government is correct that Defendant has pointed to no such misconduct here.

Finally, the Government points to Defendant's claim that he had only twenty-two

13

hours to review the Attorneys' Possession Only materials. (Response, Doc. 188, Pg. ID 944; Motion, Doc. 184, Pg. ID 917.) The Government reiterates that an affidavit submitted by Campbell County Detention Center's Major Grosser attests that Defendant has had ample time and opportunity to review discovery. (Response, Doc. 188, Pg. ID 944; *see also* Grosser Aff., Doc. 176-1.) And, as the Court has already noted, the remedy for more time to review is not dismissal, but a continuance, which is a remedy the Court has offered, and Defendant has refused. (*Id.*) The Court thus agrees with the Government: dismissal is unwarranted.

*     *     *

Thus, based on the foregoing, the Court **DENIES** Defendant's Motion in Limine (Doc. 184).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

14