**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION - CINCINNATI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:24-cr-72(1) |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| CESAR CERVANTES, | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant Cesar Cervantes' Motion for New Trial (Doc. 206). The Government filed a Response in Opposition (Doc. 222), and Defendant filed a Reply (Doc. 225). The Government subsequently filed a Supplemental Memorandum (Doc. 226). Thus, this matter is ripe for the Court's review. For the following reasons, Defendant's Motion for New Trial (Doc. 206) is **DENIED**.

## BACKGROUND

On July 17, 2024, a grand jury returned an indictment charging Defendant Cesar Cervantes with three counts: (1) drug trafficking conspiracy; (2) distribution of cocaine; and (3) money laundering conspiracy. (Indictment, Doc. 17.) Defendant's jury trial commenced on June 9, 2026. (6/9/2026 Minute Entry.) On June 22, 2026, the jury returned a verdict of guilty on all three counts. (6/22/2026 Minute Entry.) Thereafter, on July 6, 2026, Defendant moved for a new trial. (Motion for New Trial, Doc. 206.) After the trial transcripts were filed on the docket, the Government filed a Response in Opposition (Doc.

222), to which Defendant filed a Reply (Doc. 225). The Government then filed a Supplemental Memorandum (Doc. 226) responding to arguments Defendant made in his Reply.

**LAW & ANALYSIS**

Federal Rule of Criminal Procedure 33 allows a court, upon a defendant's motion, to vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A defendant has fourteen days from the verdict of guilty to file such a motion. Fed. R. Crim. P. 33(b)(2). "The decision to grant or deny a motion for new trial rests within the district court's sound discretion." *U.S. v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). And, the district court "should exercise such discretion only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Pierce*, 62 F.3d 818, 825 (6th Cir. 1995). Or, when the defendant moves for a new trial based on newly discovered evidence, the Court can exercise this discretion only if: (1) the evidence was discovered after the trial; (2) it could not have been discovered earlier with due diligence; (3) it is material and not merely cumulative or impeaching; and (4) the evidence would likely produced an acquittal if the case was retried. *U.S. v. Robinson*, 366 F. Supp. 2d 498, 507-08 (E.D. Mich. 2005).

Defendant does not bring his Motion for New Trial on grounds of newly discovered evidence. (*See* Motion, Doc. 206.) While he does not explicitly state the legal grounds on which he does bring his Motion, the Court focuses its analysis on whether he has presented an extraordinary circumstance "where the evidence preponderates heavily against the verdict." *See Pierce*, 62 F.3d at 825. To this end, Defendant brings several

arguments in his Motion, and the Court examines each in turn.

## I. Allegations of False Evidence and Evidence Manipulation

Defendant first argues that the Government presented false evidence during the testimony of Agent Cody Miller. (Motion, Doc. 206, Pg. ID 1295.) Specifically, Defendant refers to the mix-up that occurred when Agent Miller presented to the jury twenty-one kilograms of cocaine as the kilograms Defendant had transferred in July 2024. (*Id.*; *see also* Transcript, Doc. 210, Pg. ID 1479-81.) These kilograms had "Nike" written on their packaging. (*Id.*) Later during his testimony, though, Agent Miller retracted his statement and said that four of the kilograms presented to the jury were not part of the twenty-one seized, and replaced those four with the correct "Nike"-labeled kilograms. (*Id.* at Pg. ID 1295-96; Transcript, Doc. 210, Pg. ID 1515-17.) Defendant takes issue with this mistake, claiming that he "testified to false evidence and attempted to correct it," which caused him to lose credibility. (Motion, Doc. 206, Pg. ID 1296.) But, the Government responds that Defendant had the opportunity, and in fact, seized the opportunity, to cross-examine Agent Miller about this inconsistency. (Response, Doc. 222, Pg. ID 2565-66.) As the Government points out, the Sixth Circuit "considers allegedly false testimony less pernicious when it is met with prompt and forceful cross-examination that brings inconsistencies to the jury's attention." (*Id.* at Pg. ID 2566 (quoting *United States v. Zamora*, No. 24-1809, 2025 WL 3476178, at *8 (6th Cir. Dec. 3, 2025)).) Here, the Court agrees that the jury was "clearly able to assess [the witness's] credibility at trial." *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999). The Court does not find that this error warrants a new trial.

Next, Defendant argues that, during the same testimony, Agent Miller stated that all twenty-one kilograms were labeled with the word "Nike," which is inconsistent with the report, which states that twenty bricks had a "Nike" label and one was in brown wrapping with no words. (Motion, Doc. 206, Pg. ID 1296.) The Government notes that this is not "newly discovered evidence," as this report was previously produced to Defendant, and Defendant even referred to it in his closing argument. (Response, Doc. 222, Pg. ID 2566.) To that end, the Court points out that Agent Miller testified that twenty-one kilograms were wrapped with the "Nike" packaging, and one was wrapped in plain brown wrapping. (Transcript, Doc. 210, Pg. ID 1519.) Nevertheless, the Court is unpersuaded by Defendant's arguments. As the Government correctly points out, Counts One and Two of the Indictment required only five kilograms of cocaine; so, assuming arguendo that the Court only considers the seventeen kilograms with "Nike" that had been properly identified initially, "that threshold is met several times over." (Response, Doc. 222, Pg. ID 2567.) Importantly, Defendant does not argue why any of these discrepancies are material; the Court finds that they are not. Indeed, "[a]n error is harmless where the properly admitted evidence of guilt is so overwhelming that the prejudicial effect of the error is insignificant by comparison." *United States v. Maund*, 167 F.4th 941, 952 (6th Cir. 2026).

Defendant argues further that the Government presented false evidence when Agent Miller testified that Michael Frascillo, "the Kid," was a truck driver; Defendant maintains that he does not have a commercial driver's license. (Motion, Doc. 206, Pg. ID 1297.) And, Defendant notes that Tucson Police Department Detective Derek Quezada

later admitted that Frascillo was not a truck driver but that he can drive a box truck. (*Id.*) According to Defendant, these statements show that the Government was "caught in front of the jury presenting fabricated evidence." (*Id.*)

The Government responds, though, by stating that this argument "mischaracterizes the record and is meritless." (Response, Doc. 222, Pg. ID 2569.) The Government points to the testimony of three different witnesses at trial who identified Frascillo as "Defendant's courier and/or [drug] associate." (*Id.*) Agent Miller never called Frascillo a "semi driver," but instead called him an "Arizona-based courier" and introduced photos of a semi-truck owned by Frascillo's aunt. (*Id.*) Defendant then questioned Agent Miller about whether Frascillo was a semi driver, to which Agent Miller answered "yes." (*Id.* at Pg. ID 2569-70; *see also* Transcript, Doc. 212, Pg. ID 1770.) Additionally, a cooperator identified Frascillo as "the Kid" who repeatedly delivered drugs on behalf of Defendant, including with trucks. (*Id.* at Pg. ID 2570.) Finally, Detective Quezada identified Frascillo as Defendant's associate and "confirmed he used his Aunt Linda's semi-truck." (*Id.*; *see also* Transcript, Doc. 219, Pg. ID 2422-23.)

Rather, according to the Government, it was Defendant who characterized Frascillo as a semi-driver, moved for acquittal twice under Federal Rule of Criminal Procedure 29 based on that mischaracterization, and argued the same to the jury in his closing argument. (Response, Doc. 222, Pg. ID 2571.) The Government maintains, though, that not only does the argument mischaracterize the record, but it is immaterial, as the twenty-five-kilogram shipment at issue in this case involved a different courier altogether. (*Id.* at Pg. ID 2571-72.) Finally, the Government states that Defendant has

failed to show that the prosecution "knowingly presented false testimony," which alone warrants denial of this argument. (*Id.* (collecting cases).) The Court agrees. Any dispute over whether Frascillo was a professional truck driver or whether he simply used his aunt's truck to transfer drugs for Defendant is not material and does not warrant a new trial. Furthermore, Defendant has failed to present evidence that the characterization of Frascillo as a semi driver is indisputably false. *See Duval v. United States*, 372 F. Supp. 3d 544, 551 (E.D. Mich. 2019).

Last, Defendant argues that the Government tampered with evidence because one of his seized phones rang during trial, indicating that the Government had been charging it, and seemingly accessing it. (Motion, Doc. 206, Pg. ID 1297.) Meanwhile, Agent Miller told the Court that he was not allowed to touch the phone because it was evidence, even though "it was clear someone touched and tampered with it." (*Id.*) According to Defendant, Agent Miller "had no explanation for this tampering and break in the chain of custody for all evidence." (*Id.*) In response, the Government states that the phone simply rang, and this alone does not show tampering. (Response, Doc. 222, Pg. ID 2573.) Moreover, the phone was only used as physical evidence to show "the incriminating nature of the sheer volume and quantity of cell phones Defendant used and possessed." (*Id.*) Regardless, the Government continues, "[merely] raising the possibility of tampering is insufficient to render evidence inadmissible." (*Id.* at Pg. ID 2574 (quoting *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997)).) And, "absent actual evidence of tampering or misidentification, any challenge to the chain of custody goes to the weight of the evidence, not its admissibility." (*Id.* (quoting *United States v. Sutton*, No. 4:20-CR-22, 2021

WL 2349903, at *3 (W.D. Ky. June 8, 2021)).) Here, Defendant extensively cross-examined Agent Miller on the cell phone ringing, sought acquittal under Rule 29 twice based on these grounds, and mentioned it again during his closing argument. (*Id.* at Pg. ID 2575.) As the Government points out, the jury rejected this argument. (*Id.*) The Court does as well. Without evidence of tampering, the claim of tampering alone is insufficient, as is the argument challenging the chain of custody. *See Allen*, 106 F.3d at 700; *United States v. Conway*, No. CR 17-43-DLB-CJS, 2018 WL 5986736, at *2 (E.D. Ky. Nov. 13, 2018), *aff'd* No. 18-6260, 2020 WL 2924544 (6th Cir. Apr. 24, 2020). In sum, none of these evidentiary arguments are sufficient to warrant new trial.

## II. Allegations of Withheld Exculpatory Evidence

Defendant next asserts that the Government committed a *Brady* violation, stating that the Government withheld the "initial" wiretap call. (Motion, Doc. 206, Pg. ID 1298.) Defendant states that he requested that all Ohio wiretaps be excluded because the Government failed to provide the initial call, "which is exculpatory." (*Id.*) The call, according to Defendant, "refers to money, not drugs," and the next call "also proved Defendant had no knowledge of drugs or conspiracy." (*Id.*) However, the Government clears this confusion in its Response. (Response, Doc. 222, Pg. ID 2576.) The Government states that, in one of the wiretap calls, Defendant and the cooperator referred to a prior call between them, the "initial" call Defendant mentions in his Motion; this earlier call, though, "was not recorded or preserved and is not in the United States' possession." (*Id.*) As established by Sixth Circuit precedent, "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not

possess." (*Id.* (quoting *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007)).)

Additionally, the Government points out that "Defendant was a party to that communication and plainly remembered its contents," as he raised the call on cross-examination and confirmed the details of it. (Response, Doc. 222, Pg. ID 2576; *see also* Transcript, Doc. 214, Pg. ID 1939-40.) Importantly, "where the defendant already knows the essential facts permitting him to take advantage of the information, there is no *Brady* violation." (*Id.* (quoting *Graham*, 484 F.3d at 417).) Finally, the Government argues that the claim is immaterial, "as Defendant's own later recorded calls confirm the same in detail." (*Id.*) Put differently, the recorded phone call that the Government produced, and the referenced earlier call contain the same information. (*Id.*)

The Court agrees with the Government that no *Brady* violation occurred here. To establish a *Brady* violation, Defendant must show: (1) that the Government suppressed evidence, either willfully or inadvertently; (2) the evidence was favorable to the defense, either because it is exculpatory or impeaching; and (3) the suppressed evidence was material. *United States v. Campbell*, No. 1:19-CR-25, 2025 WL 520521, at *2 (S.D. Ohio Feb. 18, 2025). The Court finds that Defendant has failed to establish any of these elements. First, based on the Government's representations, no wiretap of the "initial call" exists, so no suppression could have occurred. Second, the referenced phone call seemingly speaks to Defendant's guilt, not his lack of guilt. As Defendant notes in his own Motion, the call included discussions about money, not drugs, because, as the Government points out, the DEA agents had told the cooperator to tell Defendant that the agents seized just money, not the drugs. (*See* Response, Doc. 222, Pg. ID 2576.) And finally, assuming that

Defendant somehow met the first two prongs, the allegedly suppressed evidence is immaterial because it contains the same information as disclosed evidence. Put simply, Defendant has failed to establish a *Brady* violation. And, if somehow there were a *Brady* violation, "a new trial is warranted only if there is a reasonable probability that the result of the trial would have differed had the government disclosed the evidence to the defense." *Campbell*, 2025 WL 520521, at *2 (quoting *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014)) (cleaned up). Defendant has not shown with reasonable probability that disclosure of this phone call would have resulted in a different outcome.

## III. Removal of Suspicious Person from Trial

Defendant next takes issue with the Court's removal of a suspicious individual, who had been present during the testimony of a cooperator, from the trial. (Motion, Doc. 206, Pg. ID 1299.) To provide context, the Court notes that the Government had previously alerted the Court of allegations that Defendant had put out a hit on the two testifying cooperators. (*See* Response, Doc. 145.) And, Defendant had filed a flurry of motions with the Court seeking release of unredacted Attorneys' Eyes Only materials related to these cooperators. (*See* Motions, Docs. 158, 160, 164, 171, 172, 173, 174, 177.) Then, during trial, Defendant continued to request physical copies of unredacted cooperator information, which would directly contradict the Protective Order in this case. (Transcript, Doc. 216, Pg. ID 2232-33.) The morning after Defendant made this request, and the day after the first cooperator testified, the Government alerted the Court that the girlfriend of another cooperating witness received threatening messages that directly referenced the earlier day's testimony. (Transcript, Doc. 214, Pg. ID 1837-39.) Defendant

denied any involvement with these threats. (*Id.* at Pg. ID 1839.)

Later that day, an individual who was unknown to the Court or any party entered the courtroom. (Transcript, Doc. 214, Pg. ID 1930-31.) He had also been present the prior day when the first cooperating witness took the stand. (*Id.*) The Court independently noted that this individual, on both days, had engaged in suspicious behavior, such as purposefully covering and hiding his face from the Court and moving about the courtroom randomly. (*See* Transcript, Doc. 215, Pg. ID 1996-97.) The record reflects that this individual was not part of Defendant's family, not known to the Court, and not known to the Government. (*Id.*) The Government conjectured that he could be the one providing information about the cooperator's testimony to allow others to threaten these cooperators. (*Id.*) The United States Marshals Service also searched the individual's record, which was flagged with "approach with caution," and included significant criminal history, including drug trafficking and violent offenses. (*Id.* at Pg. ID 1932.) Again, Defendant stated that he knew nothing about this individual and reiterated that he "would never compromise the integrity of the court." (*Id.* at Pg. ID 1933.) After a brief recess and careful consideration of both the Court's own observations and the information presented, the Court ultimately removed the individual from the courtroom.

Now, Defendant objects to this removal, stating that the Court denied his right to a public trial due to fabrications that the Government lodged against Defendant. (Motion, Doc. 206, Pg. ID 1299.) But, as the Government points out, the Court's partial closure was, in fact, proper. (*See* Response, Doc. 222, Pg. ID 2577.) The Undersigned believes strongly and fervently in the principle of an open and public court. (*See* Transcript, Doc. 215, Pg.

ID 1997; *see also Maseru v. Univ. of Cincinnati*, No. 1:18-CV-106, 2022 WL 19039626, at *1 (S.D. Ohio Oct. 4, 2022) (McFarland, J.).) Indeed, this Court recognizes the importance of upholding a criminal defendant's constitutional right to a public trial. *See* U.S. Const. Amend. VI. That said, the Court notes that the Sixth Circuit has "consistently held that preventing witness intimidation constitutes substantial reason to justify the partial closure of the courtroom." *United States v. Miller*, No. 23-5485, 2024 WL 3760328, at *9-10 (6th Cir. Aug. 12, 2024). In order to justify a partial closure of the courtroom: (1) the Government must show a substantial reason that it is likely to be prejudiced absent the closure; (2) the closure must be narrowly tailored; (3) the trial court must consider reasonable alternatives; and (4) the trial court must make findings adequate to support the closure. *Id.* (quoting *United States v. Hendricks*, 950 F.3d 348, 355 (6th Cir. 2020)).

On the first prong, the Court notes that, during the pendency of the trial, the Government presented concerning statements regarding potential witness intimidation of two of its witnesses. (*See* Transcript, Doc. 214, Pg. ID 1837-39.) This intimidation included threats made to the girlfriend of a cooperating witness intended to prevent that witness's testimony. The Government then brought to the Court's attention that the threats were specific to previous testimony, insinuating that whoever had made the threats had received inside knowledge about that prior testimony. (*Id.*) To that end, only one individual present during the prior day's testimony was unidentifiable to any party. (*Id.* at Pg. ID 1930-31.) The Court found that the Government showed substantial reason of prejudice absent the partial closure to this individual.

Next, the Court narrowly tailored the closure only to the individual discussed on the record; anyone else was still permitted to enter the courtroom, absent disruptive or disrespectful conduct. (Transcript, Doc. 215, Pg. ID 1998.) Notably, Defendant did not object to his removal at the time and agreed that "security comes first." (Transcript, Doc. 215, Pg. ID 1992.) And, the Court, during its recess, considered other alternatives, but given the seriousness of the allegations, coupled with Defendant's lack of objection at the time, the Court found that removal was the best option. *See Miller*, 2024 WL 3760328, at *9-10. Finally, the following day, the Court made extensive findings on the record of what led to this individual's removal, including the Court's own observations, the Government's statements of concern, and the individual's criminal record. (*Id.* at Pg. ID 1996-98.) Thus, Defendant's argument that the partial closure was due to "fabricated allegations" the Government made against him holds no water. (*See* Motion, Doc. 206, Pg. ID 1299.) In fact, the record is absent of any claim from the Government that this individual was connected to Defendant. Rather, the Court properly balanced Defendant's right to a public trial with the need to protect the safety and security of everyone in the courtroom, especially witnesses. With its carefully considered, narrowly tailored action, the Court's removal of this individual was justified.

## IV. The Government's Closing Argument Rebuttal

Next, Defendant seeks a new trial based on comments the Government made during its closing argument rebuttal that Defendant characterizes as improper. (Motion, Doc. 206, Pg. ID 1300.) Defendant points to the statements AUSA Shadley made during the rebuttal that Defendant "never gave an explanation for the calls," or their contents,

implying that Defendant has a burden to present evidence or testify. (*Id.*) The Government, though, argues that these statements attacked deficiencies in Defendant's own closing argument, made in his role as his own lawyer, and not his failure to testify or present evidence. (Response, Doc. 222, Pg. ID 2582.)

As Defendant did not raise this objection at trial, the Court reviews this prosecutorial conduct for plain error. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). "It is axiomatic that a defendant in a criminal trial need not testify or produce any evidence, and that a prosecutor may not comment on the absence of such." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994). But, a prosecutor is "entitled to point out the lack of evidence supporting [a defendant's] theories." *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). "In evaluating a claim of improper comment by a prosecutor, the court should consider (1) whether the comments were manifestly intended to reflect on the accused's silence or are of such a character that the jury would 'naturally and necessarily' construe them as such; (2) whether the comments were isolated or extensive; (3) whether there was otherwise overwhelming evidence of guilt; and (4) whether appropriate curative instructions were given." *United States v. Gonzalez*, 512 F.3d 285, 292-93 (6th Cir. 2008). In analyzing the first consideration, the Court "cannot find that the prosecutor manifestly intended to comment on the defendant's failure to testify if some other explanation for his remark is equally plausible." *United States v. Wells*, 623 F.3d 332, 339 (6th Cir. 2010) (quoting *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981)).

Examining first whether the statements were intended to reflect on Defendant's silence, and were thus improper, the Government argues, and the Court agrees, that they

were not. (Response, Doc. 222, Pg. ID 2582-83.) While the prosecutor "may not argue or imply that the burden of persuasion falls to a defendant to prove his innocence," the prosecutor can "point out the lack of evidence supporting defense theories." *Redinger v. Harry*, No. 09-11210, 2013 WL 776427, at *8 (E.D. Mich. Feb. 22, 2013)) (cleaned up). As the court in *Redinger* found, such identification of deficiencies in defense theories "does not amount to an attempt by the prosecutor to shift the burden of proof." 2013 WL 776427, at *8. The Government maintains that the statements made during rebuttal were simply intended to point out the lack of evidence supporting Defendant's theories. (Response, Doc. 222, Pg. ID 2583.) And, in support of this argument, the Government correctly notes that, multiple times throughout the rebuttal, AUSA Shadley reiterated that Defendant had no burden to prove anything. (*Id.*; *see also* Transcript, Doc. 211, Pg. ID 1725-27, 1729-31, 1738-39.) Examining the transcript, the Court notes that AUSA Shadley directly attacked arguments Defendant made in his closing; namely, the rebuttal addresses the arguments that Defendant was merely mentoring the co-Defendants and had nothing to do with any drug trafficking operations. (*See* Transcript, Doc. 211, Pg. ID 1730, 1734, 1738-39; *cf.* Pg. ID 1685-86, 1689-90.)

The Court finds context here is important, in that the Defendant chose to represent himself. And, on several occasions, the Court reminded the Defendant not to testify or make statements during his cross-examination of witnesses. (*See, e.g.*, Transcript, Doc. 212, Pg. ID 1760-61.) In his capacity as his own attorney, Defendant gave over an hour of closing arguments, notwithstanding his decision not to testify at trial. In commenting on the uncontroverted evidence and the lack of evidentiary support for Defendant's theories,

AUSA Shadley responded to the theories presented by Defendant, who was acting as his own lawyer, and never made reference to Defendant's decision not to testify. *See United States v. Kuehne*, 547 F.3d 667, 690-91 (6th Cir. 2008) (noting that "the AUSA's statement highlighting the uncontroverted evidence was not improper"); *Forrest*, 402 F.3d at 686 (noting that "the prosecutor's comments on the absence of supporting evidence did not improperly highlight [the defendant's] failure to take the stand himself"). And, AUSA Shadley specifically clarified that "what the Defendant says as his own lawyer is not evidence." (Transcript, Doc. 211, Pg. ID 1726.) The Court acknowledges the cases cited by Defendant in his Reply, but observes that these cases lack the pro se context that is present here. (*See* Reply, Doc. 225, Pg. ID 2590-97.) For these reasons, the Court cannot find that AUSA Shadley's comments were manifestly intended to reflect on Defendant's silence.

Nor can the Court conclude that AUSA Shadley's statements were likely to be construed by the jury as commentary on Defendant's decision to not testify. AUSA Shadley repeatedly stated that Defendant had no burden of proof, and the record does not indicate that AUSA Shadley intended the remarks to prejudice Defendant. *See Bond*, 22 F.3d 662 at 669. Indeed, the statements in question were isolated to one small portion of the Government's rebuttal, rather than part of an extensive series of improper remarks throughout the trial. *See Wells*, 623 F.3d at 344.

In any event, the strength of the evidence of Defendant's guilt was overwhelming. The Government presented hundreds of exhibits and hours of testimony tying Defendant directly to cocaine trafficking and money laundering. *See United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002). And, the Court gave a jury instruction specifically mentioning

that Defendant has no burden to prove anything, present any evidence, or testify. (*See* Transcript, Doc. 211, Pg. ID 1719-20; *see also* Final Jury Instructions, Doc. 202, Pg. ID 1245); *see also CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) (noting that "juries are presumed to follow the court's instructions"). Therefore, each of the Court's considerations weighs against any finding of impropriety or prejudice as it relates to AUSA Shadley's rebuttal comments. Accordingly, a new trial is not warranted.

* * *

One final matter remains. Defendant makes several more claims of prosecutorial misconduct and due process violations that have been present "since the beginning of this case," along with a request that a new trial exclude "all fabricated evidence on behalf of the prosecution and police." (Motion, Doc. 206, Pg. ID 1301-06.) The Government addresses these arguments briefly, stating that they are contradicted by the record, irrelevant, not raised at trial, difficult to ascertain, fabricated, or all of the above. (Response, Doc. 222, Pg. ID 2585.) Further, the Government states that these claims are immaterial considering the overwhelming evidence against Defendant. (*Id.*) The Court agrees with the Government's assessment of these remaining arguments. Moreover, and more importantly, the Court notes that Defendant has brought these same claims repeatedly during the pendency of this case. (*See* Motions, Docs. Docs. 158, 160, 164, 171, 172, 173, 174, 177.) To that end, the Court has extensively reviewed and analyzed these motions, issuing Orders specifically addressing and denying these arguments. (*See* Orders, Docs. 163, 169, 178, 186, 193, 194, 199; *see also* 5/12/2026 Notation Order; 5/18/2026 Notation Order.) The Court finds that reiterating its previous findings weighs

against the interest of judicial economy.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for New Trial (Doc. 206).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: Matthew W. McFarland

JUDGE MATTHEW W. McFARLAND